12 SEP -6 PM 2: 16

DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. **12CR3734WQH** |
| Plaintiff, ) | I N D I C T M E N T |
| v. ) | Title 18, U.S.C,. Sec. 371 - Conspiracy; Title 18, U.S.C., Sec. 1343 - Wire Fraud; |
| MARTIN PAUL BEAN III, ) | Title 18, U.S.C., Sec. 1341 - Mail Fraud; Title 18, U.S.C., Sec. 545 - Importation Contrary |
| Defendant. ) | to Law; Title 21, U.S.C., Secs. 331(d), 333(a)(2) and 355- Sale of Unapproved Drugs; Title 21, U.S.C., Secs. 331(a), 333(a)(2),350(o), 353(b)(4)(A) and 360(j) - Sale of Misbranded Drugs; Title 18, U.S.C., Sec. 1956(h) - Conspiracy to Launder Money; Title 18, U.S.C., Sec. 1956(a)(1)(B)(i) - Money Laundering; Title 18, U.S.C., Sec. 1956(a)(2)(A) - International Money Laundering; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Secs. 981 and 982, and Title 28, U.S.C., Sec. 2461 - Criminal Forfeiture |

The grand jury charges:

Introductory Allegations

1. The Food, Drug & Cosmetic Act, Title, 21 United States Code, Sections 301-395 ("FDCA"), is intended to assure, among other things, that all drugs manufactured and distributed within the United States are safely manufactured, made from appropriate ingredients, and properly labeled. Pursuant to the terms of the FDCA, the U.S. Food and Drug Administration ("FDA") regulates the manufacture, processing, labeling, and distribution of all drugs shipped and received in interstate commerce, including the wholesale distribution of prescription drugs.

MKP:nlv(2):San Diego
9/6/12

2. Under the FDCA, anyone manufacturing, preparing, compounding, or processing prescription drugs for sale and use in the United States must annually register with the FDA as a drug establishment, and provide a list to the FDA of the drugs which they manufacture for commercial distribution, and a copy of all labeling. Title 21, United States Code, Section 360(a)(1) and (j). This registration requirement applies equally to drug establishments located outside of the United States that import their drugs into the United States. Title 21, United States Code, Section 360(i). Under the FDCA, a drug is deemed misbranded if it was manufactured at any domestic or foreign establishment and that drug was not annually listed with the FDA by the establishment as one of the drugs which was manufactured for commercial distribution in the United States at that location. Title 21, United States Code, Sections 352(o) and 360(j).

3. Under the FDCA, no person may offer for sale in the United States any drug not approved by the FDA. Title 21, United States Code, Sections 331(d) and 353(a). The approval process addresses the chemical composition of the drug, the drug's safety and effectiveness, and elements of the drug's distribution, such as the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of the drug, as well as the labeling to be used for the drug. Title 21, United States Code, Section 355(b)(1)(A) - (F). The approval process is specific to each manufacturer and each product and its labeling. Title 21, C.F.R., Section 314.50. Drugs manufactured outside the United States which are not intended for use in the United States do not go through this approval process and are considered unapproved drugs.

4. Any prescription drug whose labeling fails to bear the words "Rx only" is deemed to be misbranded. Title 21, United States Code, Section 353(b)(4)(A). All wording required by the FDCA to appear on drug labels and labeling sold in the continental U.S. must be in the English language. Title 21, C.F.R,. Section 201.15(c)(1).

5. At all times relevant herein, the drugs marketed in the United States under the names Gemzar®, Taxotere®, Eloxatin®, Zometa® and Kytril® were prescription drugs within the meaning of the FDCA. These drugs are used to treat patients with cancer, and are typically administered intravenously to the patient.

//

2

6. It is unlawful for anyone other than the manufacturer of a drug manufactured in the United States and exported to import that same drug back into the United States. Title 21, United States Code, Sections 331(t) and 381(d)(1).

7. Between on or about February 24, 2005, and up to and including on or about October 30, 2011, defendant MARTIN PAUL BEAN III ("BEAN") operated a business from his residence in Boca Raton, Florida, that sold over $7 million of prescription oncology drugs (for treatment of cancer) to doctors throughout the United States. Defendant BEAN, primarily doing business as GlobalRxStore, ordered unapproved drugs from foreign sources, including sources in Turkey, India and Pakistan, and sold them to doctors within the United States at substantially discounted prices.

## Count 1

**Conspiracy – 18 U.S.C. §371**

8. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

9. Between on or about February 24, 2005, and up to and including on or about October 30, 2011, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did knowingly and willfully conspire with Maher Idriss (charged elsewhere) and others to commit offenses against the laws of the United States, to wit:

   a. wire fraud, in violation of Title 18, United States Code, Section 1343;
   b. mail fraud, in violation of Title 18, United States Code, Section 1341;
   c. importation contrary to law, in violation of Title 18, United States Code, Section 545;
   d. sale of unapproved drugs, in violation of Title 21, United States Code, Sections 331(d), 333(a)(2) and 350;
   e. sale of misbranded drugs, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 350(o), 353(b)(4)(A) and 360(j) and
   f. illegal importation of drugs, in violation of Title 21, United States Code, Sections 331(t), 333(a)(2) and 381(d)(1).

//
//

## METHOD AND MEANS

10. It was a method and means of the conspiracy that defendant BEAN and his co-conspirators caused misbranded and unapproved drugs, including drugs they marketed as Gemzar®, Taxotere®, Eloxatin®, Zometa® and Kytril®, ordered from foreign sources to be imported into the United States and shipped in bulk to a location in San Diego.

11. It was a further method and means of the conspiracy that defendant BEAN and his co-conspirators operated a call center in Winnipeg, Canada, using toll free numbers, where orders from doctors in the United States for over $7 million of oncology drugs were accepted by telephone, facsimile and electronic mail.

12. As a further method and means of the conspiracy, the conspirators would ship individual orders to the doctors throughout the United States from San Diego with an invoice from a California wholesale pharmacy in order to create the false and misleading appearance that the drugs were approved for use in the United States.

13. As a further method and means of the conspiracy, defendant BEAN and his co-conspirators caused oncologists throughout the United States to pay for the drugs by either mailing a check to the location in San Diego named on the invoice, or providing credit card information to GlobalRxStore, which was electronically processed in San Diego for payment.

14. As a further method and means of the conspiracy, the conspirators would conceal and disguise the location, source, ownership and control of the funds, by wire transferring over $2 million of the proceeds of the sale of the drugs from the account of the pharmacy in San Diego to a bank account in Canada controlled by defendant BEAN and his co-conspirators, and another $3 million to accounts abroad to pay the foreign sources of the pharmaceuticals.

15. As a further method and means of the conspiracy, defendant BEAN did not file tax returns on the proceeds he received from the sale of the prescription pharmaceuticals, in order to conceal and disguise the source, ownership and control of the funds.

//
//
//

## OVERT ACTS

16. In furtherance of said conspiracy and in order to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   a. On or about October 16, 2007, in Boca Raton, defendant MARTIN BEAN wrote a response to a doctor who had forwarded a letter from a major U.S. supplier of oncology drugs (which noted that the FDA had warned that offering chemotherapy drugs at prices substantially below market value raised questions about the pedigree of such drugs), describing the letter as an "amateur scare tactic."

   b. On or about May 21, 2008, in San Diego, a co-conspirator shipped an order of misbranded and unapproved "Gemzar" labeled in a foreign language to a doctor in Boca Raton, Florida.

   c. On or about April 21, 2009, in San Diego, a co-conspirator wire transferred $70,689.47 from the sale of misbranded and unapproved oncology drugs to an account in Canada controlled by defendant BEAN and his co-conspirators.

   d. On or about April 22, 2009, in Canada, a co-conspirator wire transferred $9,785.00 of the proceeds from the sale of the misbranded and unapproved drugs to the account of defendant BEAN in Boca Raton.

   e. On or about April 23, 2009, in Canada, a co-conspirator wire transferred $9,785.00 of the proceeds from the sale of the misbranded and unapproved drugs to the account of defendant BEAN in Boca Raton.

   f. On or about April 24, 2009, in Canada, a co-conspirator wire transferred $9,785.00 of the proceeds from the sale of the misbranded and unapproved drugs to the account of defendant BEAN in Boca Raton.

   g. On or about August 6, 2010, in Boca Raton, defendant BEAN wrote an electronic mail message to co-conspirators in San Diego and Canada, warning them that they might be dealing with "undercover FDA."

   h. On or about November 17, 2010, in Canada, a co-conspirator sent a facsimile to a doctor in Illinois, entitled "Understanding NDC Numbers, GlobalRxStore Information Sheet,"

explaining that the GlobalRxStore products did not bear NDC (National Drug Code) numbers on their labels because they were obtained from a "European Channel."

    i. On or about February 22, 2011, in San Diego, a co-conspirator placed in inventory boxes of "Abraxane" intended to be sold in India that had been illegally imported into the United States.

    j. On or about May 25, 2011, in San Diego, defendant BEAN placed boxes of oncology drugs in a vehicle for transportation to a storage location.

    k. On or about June 20, 2011, in Boca Raton, defendant BEAN caused a package containing misbranded and unapproved Zoldria, manufactured in India and sold as a generic form of Zometa® but not approved for use in the United States, to be delivered to a doctor in Lawndale, California.

    l. On or about September 2, 2011, in Canada, a co-conspirator sent by facsimile to a doctor in Granada Hills, California, a copy of a wholesaler dealer's license from a firm in the United Kingdom, which was represented to be the supplier of the drugs offered for sale.

    m. On or about October 5, 2011, in Canada, a co-conspirator told a customer (who had called to complain that the drugs shipped to their office were not the proper dosage and the packaging was in a foreign language) not to panic over the fact the drugs were shipped from Canada.

All in violation of Title 18, United States Code, Section 371.

Counts 2-4

**Wire Fraud - 18 U.S.C. §1343**

17. The Introductory Allegations in paragraphs 1-7 are incorporated herein as if set forth in full.

18. Paragraphs 10-15 of Count 1 are re-alleged and incorporated herein as more fully describing the scheme and artifice to defraud.

19. Beginning on or about February 24, 2005, and continuing up to and including on or about October 30, 2011, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, devised and intended to devise a material scheme and artifice to defraud and to obtain money

by means of materially false and fraudulent pretenses and representations, to wit: that the drugs he offered for sale could be lawfully imported, sold, received and used in the United State; did transmit and cause to be transmitted by wire communication in interstate commerce, on or about the dates set forth below in Column A, from the place set forth below in Column B to the place set forth below in Column C, writings, signs, signals and sounds, as set forth below in Column D, for the purpose of executing such scheme and artifice:

| Count | Column A (date) | Column B (origin) | Column C (end) | Column D (matter) |
|---|---|---|---|---|
| 2 | September 27, 2007 | Boca Raton, FL | San Diego, CA | Email regarding return of "Taxotere" |
| 3 | June 4, 2011 | Boca Raton, FL | San Diego, CA | $500 wired via Western Union to pay courier to deliver "Gemzar", "Taxotere" and Zoldria to a doctor in Fremont, CA |
| 4 | June 11, 2011 | Boca Raton, FL | San Diego, CA | telephone call discussing a company in India willing to print NDC numbers on drug labels |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Counts 5-8

**Mail Fraud – 18 U.S.C. §1341**

20. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

21. Paragraphs 10 through 15 of Count 1 are re-alleged and incorporated herein as more fully describing the scheme and artifice to defraud.

22. Beginning on or about February 24, 2005, and continuing up to and including on or about October 30, 2011, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III devised and intended to devise a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses and representations, to wit: that the drugs he offered for sale could be lawfully imported, sold, received and used in the United State; did knowingly cause to be delivered by mail or private or commercial interstate carrier according to the direction thereon, on or about the dates set forth below in Column A, from the place set forth below in Column B

to the place set forth below in Column C, any matter or thing, as set forth below in Column D, for the purpose of executing such scheme and artifice:

| Count | Column A (date) | Column B (origin) | Column C (end) | Column D (matter) |
|---|---|---|---|---|
| 5 | May 21, 2008 | San Diego, CA | Boca Raton, Fl | package of "Gemzar" |
| 6 | December 4, 2009 | San Diego, CA | Jamestown, NY | package of "Gemzar" and "Taxotere" |
| 7 | October 6, 2010 | San Diego, CA | Jamestown, NY | package of "Eloxatin" and "Taxotere" |
| 8 | February 23, 2011 | San Diego, CA | Jamestown, NY | package of "Zometa" |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## Counts 9-13

**Importation Contrary to Law – 18 U.S.C. §545**

23. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

24. On or about the dates set forth below in Column A, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did fraudulently and knowingly import and bring into the United States and cause to be imported and brought into the United States, merchandise, to wit, prescription drugs, as described below in Column B, contrary to law, in that:

    a. the drugs were unapproved for introduction into interstate commerce in the United States, in violation of Title 21, United States Code, Sections 331(d) and 355; and

    b. the drugs were misbranded, in violation of Title 21, United States Code, Sections 331(a), 350(o), 360(j) and 353(b)(4)(A); and knowing the same to have been imported contrary to law:

| Count | Column A (date) | Column B (drug) |
|---|---|---|
| 9 | March 2, 2010 | Grandem (sold as "generic" Kytril®) |
| 10 | January 3, 2011 | "Eloxatin, 50mg" |
| 11 | March 22, 2011 | Zoldria (sold as "generic" Zometa®) |

//
//

8

| Count | Column A (date) | Column B (drug) |
|---|---|---|
| 12 | April 1, 2011 | "Taxotere, 80mg" |
| 13 | April 14, 2011 | "Gemzar, 1g" |

All in violation of Title 18, United States Code, Sections 545 and 2.

## Counts 14-18

**Sale of Unapproved Drugs – 21 U.S.C. §§ 331(d), 333(a)(2) and 355**

25. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

26. On or about the dates set forth below in Column A, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did, with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce certain prescription drugs, as described below in Column B, without approval from the FDA of an application permitting their use for treatment of patients in the United States:

| Count | Column A (date) | Column B (drug) |
|---|---|---|
| 14 | March 2, 2010 | Grandem (sold as "generic" Kytril®) |
| 15 | January 3, 2011 | "Eloxatin, 50mg" |
| 16 | March 22, 2011 | Zoldria (sold as "generic" Zometa®) |
| 17 | April 1, 2011 | "Taxotere, 80mg" |
| 18 | April 14, 2011 | "Gemzar, 1g" |

All in violation of Title 21, United States Code, Sections 331(d), 333(a)(2) and 355, and Title 18, United States Code, Section 2.

## Counts 19-23

**Sale of Misbranded Drugs – 21 U.S.C. §§331(a), 333(a)(2), 350(o), 353(b)(4)(A) and 360(j)**

27. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

//
//
//

9

28. On or about the dates set forth below in Column A, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did, with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce certain prescription drugs, as described below in Column B, that were misbranded, to wit:

a. the labels and labeling did not contain the words "Rx Only," as required by Title 21, United States Code, Section 353(b)(4)(A); and

b. the drugs were manufactured at a foreign establishment and such drugs were not annually listed with the FDA by the establishment as one of the drugs which was manufactured for commercial distribution in the United States at that location, as required by Title 21, United States Code, Sections 352(o) and 360(j).

| Count | Column A (date) | Column B (drug) |
| --- | --- | --- |
| 19 | March 2, 2010 | Grandem (sold as "generic" Kytril®) |
| 20 | January 3, 2011 | "Eloxatin, 50mg" |
| 21 | March 22, 2011 | Zoldria (sold as "generic" Zometa®) |
| 22 | April 1, 2011 | "Taxotere, 80mg" |
| 23 | April 14, 2011 | "Gemzar, 1g" |

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 350(o), 353(b)(4)(A), and 360(j), and Title 18, United States Code, Section 2.

### Count 24

**Conspiracy to Launder Money – 18 U.S.C. §1956(h)**

29. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

30. Paragraphs 10- through 15 are hereby re-alleged and incorporated herein as if set forth in full.

31. Between on about February 24, 2005, and up to and including on or about October 30, 2011, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did knowingly and willfully conspire with Maher Idriss (charged elsewhere) and others to:

//

      a.    conduct and cause to be conducted financial transactions, which in fact involved over $2 million in proceeds of specified unlawful activities, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and importation contrary to law, in violation of Title 18, United States Code, Section 545; knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      b.    transfer and cause to be transferred over $3 million from a place in the United States to a place outside the United States, with the intent to promote the carrying on of specified unlawful activities, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and importation contrary to law, in violation of Title 18, United States Code, Section 545; in violation of Title 18, United States Code, Section 1956(a)(2)(A); all in violation of Title 18, United States Code, Section 1956(h).

Counts 25-29

<strong>Money Laundering – 18 U.S.C. §1956(a)(1)(B)(i)</strong>

32.    The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

33.    On or about the dates set forth below in Column A, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, did cause to be conducted a financial transaction, as set forth below in Column B, which in fact proceeds of specified unlawful activities, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and importation contrary to law, in violation of Title 18, United States Code, Section 545; knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities;

//

| Count | Column A (date) | Column B (financial transaction) |
|---|---|---|
| 25 | June 5, 2008 | wire transfer of $17,993.64 from San Diego to account in Canada used by Bean |
| 26 | July 22, 2008 | wire transfer of $20,542.40 from San Diego to account in Canada used by Bean |
| 27 | February 24, 2010 | wire transfer of $30,881.12 from San Diego to account in Canada used by Bean |
| 28 | December 13, 2010 | wire transfer of $29,597.53 from San Diego to account in Canada used by Bean |
| 29 | April 13, 2011 | wire transfer of $21,453.51 from San Diego to account in Canada used by Bean |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

Counts 30-35

**International Money Laundering – 18 U.S.C. §1956(a)(2)(A)**

34. The Introductory Allegations in paragraphs 1 through 7 are incorporated herein as if set forth in full.

35. On or about the dates set forth below in Column A, within the Southern District of California and elsewhere, defendant MARTIN PAUL BEAN III, did transfer and cause to be transferred funds in the amount set forth below in Column B from a place in the United States, to wit, San Diego, California, to a place outside the United States, as set forth below in Column C, with the intent to promote the carrying on of specified unlawful activities, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and importation contrary to law, in violation of Title 18, United States Code, Section 545; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2:

| Count | Column A (date) | Column B (amount) | Column C (place) |
|---|---|---|---|
| 30 | December 20, 2007 | $20,819.44 | Royal Bank of Scotland, UK |
| 31 | August 27, 2008 | $51,707.64 | Royal Bank of Scotland, UK |
| 32 | June 10, 2009 | $59,143.25 | Royal Bank of Scotland, UK |
| 33 | February 19, 2010 | $59,775.00 | HSBC Bank, UK |

//

| Count | Column A (date) | Column B (amount) | Column C (place) |
|---|---|---|---|
| 34 | April 13, 2011 | $53,926.95 | Royal Bank of Scotland, UK |
| 35 | April 26, 2011 | $38,550 | HSBC Bank, UK |

## FORFEITURE ALLEGATIONS

### Conspiracy, Mail and Wire Fraud, and Smuggling Forfeiture

36. As a result of the commission of the felony offenses alleged in Counts 1 through 13, said violations being punishable by imprisonment for more than one year, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c), defendant MARTIN PAUL BEAN III shall, upon conviction, forfeit to the United States all rights, title and interest in any and all property constituting or derived from proceeds obtained directly or indirectly as the result of such violations, including, but not limited to:

$7 million in United States currency; and one 2004 Jaguar XJ, VIN SAJWA71C64SG19564.

37. If any of the above-described forfeitable property, as a result of any act or omission of defendant MARTIN PAUL BEAN III -

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third person;

    (3) has been placed beyond the jurisdiction of the Court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the $7 million alleged above as being subject to forfeiture.

### MONEY LAUNDERING FORFEITURE

38. As a result of the commission of the felony offenses alleged in Counts 24 through 35, said violations being punishable by imprisonment for more than one year, and pursuant to Title 18, United States Code, Section 982(a)(1), defendant MARTIN PAUL BEAN III shall, upon conviction, forfeit to the United States all rights, title and interest in any and all property involved in such offenses, and any

1 | property traceable to such property, including, but not limited to: $5 million in United States currency
2 | upon conviction of the offense set forth in Count 24; $2 million in United States currency upon
3 | conviction for the offenses set forth in Counts 25 through 29; and $3 million in United States currency
4 | upon conviction of the offenses set forth in Counts 30 through 35.

5     39. If any of the above-described forfeitable property, as a result of any act or omission of defendant MARTIN PAUL BEAN III -

(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third person;
(3) has been placed beyond the jurisdiction of the Court;
(4) has been substantially diminished in value; or
(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the amounts alleged above as being subject to forfeiture.

DATED: September 6, 2012.

A TRUE BILL

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
MELANIE K. PIERSON
Assistant U.S. Attorney